UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

DANIEL SMITH,                          )
                                       )
                    Petitioner,        )
                                       )
            v.                         )    No. 2:24-cv-00400-JPH-MG
                                       )
WARDEN,                                )
                                       )
                    Respondent.        )

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Daniel Smith's petition for a writ of habeas corpus seeks relief from his conviction and sanctions in prison disciplinary case ISF 24-01-0185. For the following reasons, his petition is denied, and this action is dismissed with prejudice.

## I. Overview

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt.  *Superintendent, Mass.*

*Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

On January 19, 2024, Investigator H. Whittington wrote a conduct report in case ISF 24-01-0185, charging Mr. Smith with A-111/113, attempted trafficking. Dkt. 13-1. The conduct report described how Mr. Smith conspired with another individual to bring Suboxone into the facility through inmates who are detailed to work at Turkey Run State Park. *Id.*

The conduct report stated:

On December 14th, 2023, the Putnamville Correctional Facility (ISF), Office of Investigations and Intelligence (OII) believed that an attempt to traffic narcotics into the facility would occur using an outside offender labor line. Offender Daniel Smith 167246 was actively conspiring to traffic Suboxone pills into the facility through Turkey Run State Park.

During a recorded call on 11/11/2023 Offender Smith directs the callee to add 'Run' to the text message he had just received. The callee affirms he already knows what Offender Smith is talking [about] and says, 'It's a fucking state park.' This phone call led me to believe that Offender Smith was referring to Turkey Run State Park. In a call on 12/23/2023 Offender Smith says, 'Nate is supposed to replace those 15.' In a later call from the same day the callee says they spoke to Nathan and 'he said he has them.' Offender Smith directs the callee to tell Nathan to 'give those to the girl he talked to.'

Based off of my training and experience I believe that Offender Smith actively conspired to traffic narcotics into the facility through Turkey Run State Park by transferring contraband to an unknown female for her to place at the park in an area where the offender labor workers frequent. Conspiracy is defined in the Adult Disciplinary Handbook as attempting with another person to commit any Class A offense. Trafficking is listed as a Class A offense in the Adult Disciplinary Handbook. Offender Smith was identified by his bed location in Delta and video review of the 15N dorm phones.

2

> This offense was not reported at the time of discovery due to the ongoing investigation of potential future trafficking events involving Offender Smith.

*Id.* (paragraph breaks added).

Investigator Whittington provided a report of investigation of incident that confirmed the information from the conduct report. Dkt. 13-2.

On January 30, 2024, a screening officer notified Mr. Smith of the charge A111, conspiracy/attempting/aiding or abetting and provided Mr. Smith with a copy of the conduct report and the disciplinary hearing notice (screening report). Dkt. 13-3. The screening officer advised Mr. Smith of his rights, and Mr. Smith pled not guilty. *Id.* He did not request any witnesses but requested the phone calls as physical evidence. *Id.*

A disciplinary hearing officer ("DHO") held a hearing on February 14, 2024. Dkt. 13-5. At his hearing, Mr. Smith argued that the charge was speculative. *Id.* He stated:

> The calls are made from a different account. How could they know it is me making the phone call. The time of incident is 1-19-24 but not mentioned in the conduct report. Only three dates and calls mentioned in the investigation. The calls a month and a half apart and unrelated. The calls don't state date and time. First three calls aren't his account don't have date and time. Nothing shows "replace those 15" is referring to suboxone. I didn't hear the number "15" mentioned in the phone call. It is only talking about replacing what he owes to someone.

*Id.*

The DHO found Mr. Smith guilty and under the reason for decision, the DHO wrote:

> Staff reports, phone calls, investigation reports support charge. The preponderance of evidence against I/I leads me to believe in the charges brought against Smith. H[is] comments of a message "Run"

3

going to a callee and searching it on google stands out. It is widely known Putnamville has I/I who go to Turkey Run State Park. He tries to confirm when the callees have received certain things. He frequently tries to get into contact with an unknown female. OII staff are trained in detecting coded language.

*Id.*

The DHO imposed sanctions of a 160-day loss of earned credit time and a one-step credit class demotion. *Id.*

Mr. Smith's appeals were denied, and this habeas action followed.

### III. Discussion

The Court discerns two grounds for relief: (1) there was insufficient evidence to find him guilty of the charge; and (2) he was denied evidence of the phone calls before the hearing. Dkt. 2 at 5-8.

### A. Sufficiency of the Evidence

Mr. Smith argues that the evidence from the hearing was insufficient to support his conviction because there were no phone calls in which he says that he was going to traffick suboxone pills. Rather, the conduct report only mentioned "talk of replacing 15." Dkt. 2 at 5; dkt. 16 at 4. He argues that there is no evidence describing who he was trafficking with, what he was trafficking, or when. *Id.* He also contends that three of the six calls played at the hearing were not made from his account. Dkt. 2 at 5, 8; dkt. 13-5 at 1.[1]

---

[1] Mr. Smith also argues that the "date of incident" is listed as 1-19-2024 but the conduct report fails to state what happened on that date. Dkt. 2 at 5. The "date of incident" is the same as the "date report written." Dkt. 13-1. The relevant phone calls occurred on November 11, 2023, and December 23, 2023. *Id.* Nothing of significance occurred on January 19, 2024, other than the conduct report was written on that date. *Id.*

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (internal quotation omitted).

While Mr. Smith did not explicitly say on the recorded calls that he planned to traffick suboxone, such explicit and facially incriminating evidence was not required for the disciplinary hearing officer to find Mr. Smith guilty or for this Court to sustain his conviction.  Instead, the question for the Court is whether there is "any evidence in the record that could support the conclusion" of the hearing officer that Mr. Smith planned to traffick contraband into the prison. *Eichwedel*, 696 F.3d at 675.

Offense A-111, conspiracy/attempting/aiding or abetting, is defined as "attempting by one's self or with another person or conspiring . . . with another person to commit any Class A offense." Dkt. 13-9 at 2. Offense A113, trafficking is defined as "giving, selling, trading, transferring, . . .; or receiving, buying, trading, or transferring; or in any other manner moving an unauthorized physical object from another person without the prior authorization of the facility

warden or designee." *Id.* The Disciplinary Code for Incarcerated Individuals defines conspiracy as, "two (2) or more incarcerated individuals or other persons planning or agreeing to commit acts which are prohibited by Department or facility rules, procedure, or directive." Dkt. 13-10 at 3.

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

The definitions of the offense described above do not require findings of with whom, when, and how the trafficking was planned. Rather, there merely needs to be some evidence showing that Mr. Smith planned with someone else to have contraband transferred into the prison. The conduct report describes Mr. Smith telling a callee to add "Run" [a state park] to the text message he just received, "Nate is supposed to replace those 15," and "give those to the girl he talked to." Dkt. 13-1. Here, the conduct report, including the reporting officer's experience and training, provides some evidence in support of the disciplinary conviction for trafficking.

Furthermore, the DHO acknowledged and considered Mr. Smith's objection and argument that the "calls are made from a different account". Dkt. 13-5. The DHO relied on the staff reports in finding that calls made by Mr. Smith

showed that he attempted to traffic contraband. Dkt. 13-5. Also, the conduct report states that Mr. Smith was identified as the caller by his bed location and video review of the dorm phones. Dkt. 13-1.

In sum, Mr. Smith asks the Court to reweigh the evidence, which the Court cannot do. Because there is some evidence in the record supporting Mr. Smith's participation in trafficking, there was no denial of due process in this regard.

### B.  Denial of Evidence Before Hearing

Mr. Smith argues that the conduct report failed to provide sufficient information to allow him to prepare a defense and that his request to listen to the recorded phone calls in advance of the hearing was denied. Dkt. 2 at 5, 8. He also contends he was not informed of the dates, times, and location of the calls. *Id.* In his own words, Mr. Smith "wasn't given copies or even told about the 6 phone calls and their content until the day of my hearing. Denying me adequate time to prepare my defense to 6 calls, 3 being from someone else, without knowing when and who these calls are to impairs my ability to form an argument." Dkt. 16 at 5.

Due process affords an inmate in a disciplinary proceeding a limited right to present "evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. But due process is not violated unless the inmate is deprived of an opportunity to present material, exculpatory evidence. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones*, 637 F.3d at 847, and it is material if

7

disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). "Prison administrators are not obligated to create favorable evidence or produce evidence they do not have." *Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017).

Here, Mr. Smith has not shown that the calls that were played at his hearing were exculpatory, nor has he identified other exculpatory evidence that he was denied. Mr. Smith argues that had he known that some of the calls were not on his account, he could have requested video evidence of those calls. There is evidence in the report of conduct, however, that the calls played at the hearing were made by Mr. Smith. Dkt. 13-1 (Report of Conduct stating, "Offender Smith was identified by his bed location in Delta and video review of the 15N dorm phones"). Moreover, the record shows that the DHO considered and rejected Mr. Smith's argument that he was not the person on the calls. Dkt. 13-5 (Report of Disciplinary Hearing stating Mr. Smith's comments from the hearing, "The calls are made from a different account. How could they know it is me making the phone call."). At best, Mr. Smith's arguments could show that the plain text of the calls does not establish that Mr. Smith was arranging to traffick Suboxone into Putnamville from inmates assigned to work at Turkey Run. But the DHO explained that he considered the Investigator's statement that he interpreted the calls based on his training and experience, including inmates' use of coded language.

Mr. Smith further argues that he needed copies of the calls in advance of the hearing to prepare his defense. He has not shown, however, that had he

8

been given access to the recorded phone calls before the hearing, he could have discredited that evidence. The same is true with respect to the identity of the other persons on the calls and the exact dates on which the calls occurred.

Last, the harmless error standard applies unless the evidence withheld was material and exculpatory. *See Piggie*, 344 F.3d at 678 (finding that harmless error analysis applies to prison disciplinary proceedings); *Jones,* 637 F.3d at 847 (if petitioner suffers no prejudice as a result of an error, any due process violation is harmless). "Only evidence that undermine[s] or contradict[s]" the DHO's findings is exculpatory. *Jones*, 637 F.3d at 848. Here, as discussed above, Mr. Smith has not shown that any of the calls played at the hearing and considered by the DHO were exculpatory.

In sum, Mr. Smith has not shown that his ability to prepare a defense was impaired by not having access to the recorded calls in advance of the hearing. Moreover, there was some evidence to support the finding that Mr. Smith made phone calls attempting to have contraband brought from Turkey Run State Park to the prison.

### IV.  Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff*, 418 U.S. at 558.  There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Smith to the relief he seeks.

Accordingly, Mr. Smiths' petition for a writ of habeas corpus must be **denied** and the action **dismissed.** Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 5/4/2026

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DANIEL SMITH
167246
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All electronically registered counsel